Sioux City Bridge Co. v. Dakota County.

---

SIOUX CITY BRIDGE COMPANY, APPELLANT, V. DAKOTA COUNTY, APPELLEE.

FILED MARCH 25, 1921. No. 21252.

1. **Taxation: VALUATION OF BRIDGE.** In determining the true value of a bridge under the provisions of section 6364, Rev. St. 1913, for taxation purposes, all the elements which go to make up value should be considered. Generally these are the cost of construction, the life of the structure, depreciation, cost of reproduction, net earnings, value of stock and bonds, and, while none of these elements are controlling, each has its proper bearing upon the ultimate question of true value.

2. ————: **EQUALIZATION OF ASSESSMENT: REVIEW.** "The findings of a board of equalization must be so manifestly wrong that reasonable minds could not differ thereon before this court will disturb them." Woods v. Lincoln Gas & Electric Light Co., 74 Neb. 526.

3. ————: **ASSESSMENT.** Where property is assessed for taxation at its true value, and other property in the district is assessed at

55 per cent. of its true value, the remedy, to secure equal taxation, is to have the property assessed below its true value raised, rather than to have the property assessed at its true value reduced. Section 6300, Rev. St. 1913, contemplates that all property be assessed at its true value.

4. Evidence examined, and *held* to sustain the judgment of the district court.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

*Jesse L. Root* and *Wymer Dressler,* for appellant.

*George W. Leamer, contra.*

DAY, J.

This is an appeal to review the judgment of the district court for Dakota county affirming the action of the board of equalization of that county in assessing the value of the property of the Sioux City Bridge Company for the year 1918 at $700,000. It appears that the Sioux City Bridge Company, hereinafter designated the appellant, was in 1918, and had been for a great many years prior thereto, the owner of a steel bridge spanning the Missouri river near the city of Sioux City, Iowa. This bridge with its necessary approaches was so situated that, based upon the original cost of construction, 73.8 per cent. thereof was within Dakota county and the remainder in the state of Iowa. The bridge was designed and, constructed for the use of railroad traffic only. The total length of the bridge and approaches was 3.88 miles, the bridge proper being 1,800 feet long. For several years prior to 1918 that portion of appellant's property situated within Dakota county had been returned by its officer for taxation purposes at a valuation of $600,000. In the spring of 1918 the assessor of Dakota county made out a tax schedule in which he listed the appellant's property at $600,000 and mailed the same to appellant for its signature. Appellant refused to sign the schedule as thus made out and returned the same to the assessor with a protest that the valuation named by him was too high. The assessor declined to reduce

the valuation and thereupon made an entry in his books placing the valuation of the property at $600,000. Objections were filed to this assessment with the board of equalization and a hearing had thereon. At the conclusion of the hearing before the board of equalization, which appears to have been very informal, the valuation was fixed by the board at $700,000. On appeal from the order of the board of equalization the trial court affirmed its action and fixed the valuation at $700,000. It is insistently urged by the appellant that the valuation of $700,000 is excessive and should be reduced.

Section 6364, Rev. St. 1913, relating to the valuation of property of this character, provides, in substance, that any person or corporation owning or operating a railroad bridge independent of a railroad system, over any stream or river forming the boundary line between this and any other state, shall be required to list the same for taxation, and that the same shall be assessed and taxed at its true value in money as personal property. In arriving at one-fifth of the value, if such bridge is constructed over a navigable stream, the value of the same to the center of the channel of such stream, together with all rights, privileges and franchises connected therewith, shall be taken into consideration in ascertaining the true value of such bridge property for taxation.

The testimony shows that the bridge, including the approaches, was constructed 30 years ago at a total cost of $1,022,355.28; that it has been kept in good repair; but it is also shown that it is not the type of construction required to meet the demands of modern railroading; that the spans are not strong enough to permit the larger type of locomotives to be operated over it, nor to permit the use of "double-headed" trains unless 5 cars are placed between the locomotives. It is also shown that the modern tendency in railroading is the use of heavier locomotives and trains. Its construction accommodates but a single track.

One of the witnesess places the depreciation at approximately $200,000. On this basis the portion of the bridge taxable in Dakota county would be approximately $606,-900. Another witness places the value of the entire structure for investment purposes at 70 per cent. of its original cost, or $715,648. On this basis the portion in Nebraska would be valued at $528,148. Still another places the depreciation at $300,000, which would mean that the Dakota county portion was worth $533,098. The experts agree that to reconstruct such a bridge the cost would be increased approximately 50 per cent., and all agree that it would be an economic mistake to attempt to reconstruct or remodel it so as to meet the present requirements of railroad business. The testimony shows that the life of this structure is, for the steel work approximately 70 years, and for the masonry 100 years.

The record shows that, beginning in 1907, the bridge was leased to two railroads at a combined rental of 8 per cent. upon the original total cost of construction, the yearly rental being $81,788.42. In addition to this annual rental, the lessees paid the taxes and also a flat sum of $10,000 *per annum* to keep up repairs and meet depreciation. It also appears that the net earnings of the bridge for the period from June 1, 1896, to November 1, 1907, was $1,814,-591.55, or an average yearly of $160,150 for that period. What the income may have been from the time the bridge was constructed to June 1, 1896, does not appear.

It is difficult to lay down any hard and fast rule for the determination of the value of such structures for the purpose of taxation. All of the elements which go to make up value should be considered. Generally speaking the cost of construction, the life of the structure, depreciation, cost of reproduction, net earnings, value of stocks and bonds on the market are items which are considered. None of these elements is controlling, but each has its proper bearing upon the ultimate question of true value, so that in the end the question of value must rest in the sound

judgment of the tribunal passing upon the question, giving to the several elements their proper weight.

It will be noted that there is a very wide difference between the value of the property as fixed by the witnesses and the value as found by the board of equalization and subsequently approved by the trial court. The perplexing problem, as we view it, is as to the weight to be given to the earning of the property as bearing upon the ultimate question of the true value.

It must also be borne in mind that the rule is now established in this jurisdiction that the findings of the board of equalization, on the question of value, will not be disturbed unless they be so manifestly wrong that reasonable minds could not differ thereon. *Woods v. Lincoln Gas & Electric Light Co.*, 74 Neb. 526.

Notwithstanding that the bridge may be somewhat obsolescent, in the light of present day demands, a fair analysis of the testimony indicates that in the past the owners of the property have not only received a fair interest return upon the investment, but have also received the larger part, if not all, of the original amount expended, and are still receiving a fair interest upon the original costs. In this connection it is urged by appellant that the type of the structure is such as to invite the competition of a modern, up-to-date bridge, and that when that time comes the present bridge will be practically worthless. It would seem a sufficient answer to this suggestion that the new bridge has not yet been constructed, the present one is still enjoying a fair return on the investment, and when the present bridge ceases to be earning a fair return on its value, the taxing authorities will no doubt give the new conditions their proper consideration. Upon a consideration of all the elements which go to make up value we are of the view that the finding of the board of equalization is not so manifestly wrong that we are justified in disturbing it.

It is finally urged that this court should reduce the true value of the bridge as found by the court to 55 per

cent. of such value, for the reason that other property in the district is assessed at 55 per cent. of its true value, and that it would be manifestly unjust to appellant to assess its property at its true value while other property in the district is assessed at 55 per cent. of its value.

While undoubtedly the law contemplates that there should be equality in taxation, we are of the view that the plan of equalization proposed by appellant is not the proper remedy. The rule is now settled by a recent decision of this court that when property is assessed at its true value, and other property in the district is assessed below its true value, the proper remedy is to have the property assessed below its true value raised, rather than to have property assessed at its true value reduced. *Lincoln Telephone & Telegraph Co. v. Johnson County,* 102 Neb. 254. In the argument of appellant the soundness of this ruling is assailed, and authorities in other jurisdictions are cited which seem at variance with our holding. We are not willing, however, to recede from the rule of that case.

It follows from what has been said that the judgment of the district court should be, and it hereby is,

AFFIRMED.