COUNTY OF ADAMS ET AL., APPELLANTS, V. NEBRASKA STATE
BOARD OF EQUALIZATION AND ASSESSMENT ET AL., APPELLEES.

566 N.W.2d 392

Filed July 25, 1997.   No. S-95-1122.

Patrick T. O'Brien, of Bauer & Galter Law Firm, Paul L. Douglas, and John M. Boehm for appellants.

Don Stenberg, Attorney General, and L. Jay Bartel for appellee Board.

Tim Engler, of Harding, Shultz & Downs, for appellees Mid-America Long Distance Corp. et al.

William R. Johnson and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellees Natural Gas Pipeline Company of America et al.

William E. Peters, of Peters & Chunka, P.C., for appellees Williams Natural Gas Co. et al.

Norman H. Wright, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellees American Airlines, Inc., et al.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

WRIGHT, J.

The appellants are 124 political subdivisions of the State of Nebraska, including 72 counties, 23 cities, and 29 school districts (Subdivisions). The Subdivisions appeal from the order of the Lancaster County District Court, which sustained demurrers to the Subdivisions' petitions. The demurrers were filed by the appellees, the Nebraska State Board of Equalization and Assessment (Board) and numerous taxpayers.

## SCOPE OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court is required to accept as true all the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996).

On questions of law, an appellate court has an obligation to reach its own conclusions independent of those reached by the lower courts. *In re Estate of Ackerman*, 250 Neb. 665, 550 N.W.2d 678 (1996).

## FACTS

On April 12, 1995, the Subdivisions filed petitions alleging that in tax years 1989 and 1990, the Board wrongfully valued certain centrally assessed personal property at zero as a part of the normal equalization process for the respective tax years. The petitions requested that the Board's order of April 12, 1991, which recertified the valuations of numerous centrally assessed taxpayers for tax year 1989 at zero, be declared void. In addition, the 72 counties asked that the Board's order of June 14, 1991, which recertified the valuations of flight equipment owned by various centrally assessed air carriers at zero for tax year 1990, be declared void.

The orders of April 12 and June 14, 1991, were made by the Board pursuant to *Northern Natural Gas Co. v. State Bd. of*

*Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *cert. denied* 493 U.S. 1078, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990), and *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991). A review of those cases is helpful in understanding the disposition of the present case.

In *Northern Natural Gas Co.*, we considered the effect of *Trailer Train Co. v. Leuenberger*, 885 F.2d 415 (8th Cir. 1988), which construed "§ 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act)," 232 Neb. at 809, 443 N.W.2d at 252. We concluded that we were required to correct a "constitutional inequity by lowering the complaining taxpayer's valuation to such an extent so as to equalize it with other property in the state." *Northern Natural Gas Co.*, 232 Neb. at 815, 443 N.W.2d at 256. We reversed the decision of the Board, which had refused Northern Natural Gas Company and Enron Liquids Pipeline Company's request that their property be equalized with property of railroads and car companies operating in Nebraska, and remanded the cause to the Board for further proceedings. At the same time, we determined that a companion case involving Natural Gas Pipeline Company of America (NGPL) and Trailblazer Pipeline Company (Trailblazer) was controlled by our holding in *Northern Natural Gas Co.* Thus, we reversed the Board's order and remanded those causes for further proceedings. See *Trailblazer Pipeline Co. v. State Bd. of Equal.*, 232 Neb. 823, 442 N.W.2d 386 (1989), *cert. denied* 493 U.S. 1078, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990).

Following the issuance of *Northern Natural Gas Co.*, NGPL and Trailblazer, which owned centrally assessed property in Nebraska and operated natural gas transmission pipelines in Nebraska, sought equalization by the Board of the value of their property for taxation. The Board found that the State of Nebraska was preempted from taxing the personal property of car companies and railroad companies pursuant to the 4-R Act and that as a result of such federal preemption, the personal property of car companies and railroad companies was not subject to tax and therefore could not be the basis for a claim for equalization. The Board explained that, as a practical matter, the claims of NGPL and Trailblazer were claims requesting that

their business and personal property and/or real property be exempt from taxation. The Board concluded that it had no statutory or constitutional authority to rule upon such a claim. On appeal, we reversed the Board's decision and remanded the causes to the Board for further proceedings. See *Natural Gas Pipeline Co. v. State Bd. of Equal., supra.*

Following remand in *Natural Gas Pipeline Co.*, the Board in the instant case equalized the personal property portion of the taxpayers' 1989 valuation to zero and ordered the State Tax Commissioner to recertify the 1989 value of each company to its respective counties in accordance with the order of the Board. The Nebraska Department of Revenue recommended that the Board order that the personal property of the taxpayers be "equalized to zero," and the Board did so. Pursuant to directions from the Board, the State Tax Commissioner notified the counties of the Board's decision and directed that refunds be issued to the taxpayers in accordance with the recertified values. No appeal of the 1991 orders was taken. See *County of Adams v. State Bd. of Equal.*, 247 Neb. 179, 525 N.W.2d 629 (1995) (*County of Adams I*).

In July 1991, we issued *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991) (*MAPCO I*), cert. denied 508 U.S. 960, 113 S. Ct. 2930, 124 L. Ed. 2d 681 (1993). *MAPCO I* was a direct appeal from the Board's denial of the taxpayers' request for equalization of the 1990 values of their real and personal property with certain statutorily exempted property. The taxpayers contended that their property should be equalized at zero for 1990 because the State Tax Commissioner did not value, assess, or tax any rolling stock of railroad or carline companies operating in Nebraska in 1990. We concluded in *MAPCO I* that this proposed remedy was inappropriate:

> Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value. . . . As we said in *Natural Gas Pipeline Co.*, [237 Neb.] at 366, 466 N.W.2d at 467, "The purpose of equalization of assessments is to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax."

238 Neb. at 577, 471 N.W.2d at 742. We determined that

[t]he process of equalization, therefore, cannot be applied to property that is not taxed. The appellants' remedy in this case, although based on the uniformity and proportionality requirement of Neb. Const. art. VIII, § 1, does not involve "equalization." Any language in our opinion in *Northern Natural Gas Co., supra,* which might be read as implying the contrary is hereby disapproved.

*MAPCO I,* 238 Neb. at 577, 471 N.W.2d at 742.

*MAPCO I* determined that the taxpayers' remedy was not for their property to be "equalized" at zero percent of actual value, but for the property to be taxed uniformly and proportionately in compliance with Neb. Const. art. VIII, § 1. Therein, we declared unconstitutional a number of statutory exemptions which the federal court in *Trailer Train Co. v. Leuenberger,* 885 F.2d 415 (8th Cir. 1988), had cited as the basis for finding discriminatory taxation of railroad rolling stock and for enjoining the collection of any taxes on that property. We stated that the Board had not erred in assessing and taxing in 1990 the railroad rolling stock with respect to which the taxpayers had sought equalization. We remanded the cause to the Board, but did not specify what the Board was to do other than to follow the law.

Upon remand, the Board ordered reduction of the taxpayers' 1990 values by 18.81 percent. The taxpayers appealed, and we affirmed the decision of the Board in *MAPCO Ammonia Pipeline v. State Bd. of Equal.,* 242 Neb. 263, 494 N.W.2d 535 (1993) (*MAPCO II*), *cert. denied* 508 U.S. 960, 113 S. Ct. 2930, 124 L. Ed. 2d 681. In *MAPCO II,* we explained that *MAPCO I* required that the property which had been improperly and unconstitutionally exempted should be returned to the tax rolls and its value equalized with other property subject to the tax. We approved the Board's remedy of taxing property at the level at which it would have been taxed had the improperly exempted property been included on the tax rolls. We explained that the State could choose to erase the property deprivation by providing the taxpayer with a full refund of the tax payments or could cure the invalidity by refunding the difference between the tax paid and the tax which would have been paid if all taxpayers had been treated equally. See *McKesson Corp. v. Florida Alcohol & Tobacco Div.,* 496 U.S. 18, 110 S. Ct. 2238, 110 L.

Ed. 2d 17 (1990) (holding that in order to remedy discriminatory taxation, state may assess and collect back taxes from taxpayers who received unlawful benefits or choose to utilize combination of partial refunds and partial retroactive assessments of tax increases).

The Board opted to refund the difference between the taxes levied against the property of the parties and the taxes which the parties would have been required to pay if all of the exempt property in question had been placed on the tax rolls and taxed. We found that this relief corrected the disproportionality in taxation of the taxpayers' property in compliance with article VIII, § 1, of the Nebraska Constitution and the Due Process Clause of the 14th Amendment to the U.S. Constitution.

As discussed above, prior to *County of Adams I*, the Board in the present case recertified the values of the taxpayers' personal property at zero for tax years 1989 and 1990. After the Board's action, the State Tax Commissioner sent letters to the Subdivisions recertifying the value of the taxpayers' property at zero. The tax liability of the taxpayers was reduced, and consequently, the taxpayers were owed refunds by the Subdivisions. After our decisions in *MAPCO I* and *MAPCO II* were released, however, the Subdivisions which owed refunds to the taxpayers in the instant case—pursuant to the Board's orders dated April 12 and June 14, 1991—asked the Board to vacate its orders which equalized the property to zero.

On January 13, 1994, the Board determined that it did not have jurisdiction regarding the petitions requesting the Board to vacate its orders entered April 12 and June 14, 1991. The Subdivisions appealed to the district court from this determination, alleging that the Board should have vacated its prior orders because this court held in *MAPCO I* and *MAPCO II* that recertification to zero is an improper remedy to achieve equalization. See *County of Adams I*.

On appeal, we held that an administrative agency may reconsider its decisions only until the aggrieved party institutes judicial review or until the statutory time for review has expired. Thus, we held that the Board had properly concluded that it did not have jurisdiction to revisit its prior orders after the time for appeal had passed. We did not address, however, whether the

Subdivisions could collaterally attack the decision of the Board, because after reviewing the petitions, we determined that the case was not a collateral attack. See *id.* Therefore, we did not consider whether the Board's orders were void.

The Subdivisions considered our decision in *County of Adams I* to be an " 'invitation' for the bringing of these actions." Brief for appellants at 9. Thus, they filed their petitions collaterally attacking the Board's 1991 orders, alleging that the orders were "beyond the authority of the Board, illegal, based upon mistake and erroneous conclusions of law, unconstitutional, null and void, and erroneously omitting personal property from taxation . . . ." The Board and the various taxpayers filed demurrers on the grounds that the district court lacked subject matter jurisdiction and that the petitions did not state facts sufficient to constitute a cause of action. On September 12, 1995, the court sustained the demurrers and dismissed the petitions for want of jurisdiction. The court also found that although the Subdivisions were not parties to the prior proceedings, they were bound by the Board's orders as " 'privies.' "

## ASSIGNMENTS OF ERROR

The Subdivisions assign the following errors to the district court: (1) The court erred in determining that the Subdivisions' petitions did not present a proper basis for collateral attack on the Board's orders, (2) the court erred in finding that the Board's orders were final and binding on the Subdivisions as privies, and (3) the court erred in sustaining the demurrers of the Board and the taxpayers and dismissing the Subdivisions' petitions for want of jurisdiction.

## ANALYSIS

It is undisputed that the Subdivisions are collaterally attacking prior judgments of the Board. When a judgment is attacked in a way other than by proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a "collateral attack." *State v. Wessels and Cheek*, 232 Neb. 56, 439 N.W.2d 484 (1989).

When reviewing an order sustaining a demurrer, an appellate court is required to accept as true all the facts which are well pled, together with the proper and reasonable inferences of law

and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996). A defendant may demur to a petition when it appears on its face "(1) that the court has no jurisdiction of . . . the subject of the action . . . or (6) that the petition does not state facts sufficient to constitute a cause of action." Neb. Rev. Stat. § 25-806 (Reissue 1995).

We first consider whether the Subdivisions may collaterally attack the prior judgments of the Board. In *Schilke v. School Dist. No. 107*, 207 Neb. 448, 451, 299 N.W.2d 527, 530 (1980), we stated:

> It is well settled that where the court has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack. . . . This rule is not limited to courts of general jurisdiction, and has been held to apply to administrative boards and tribunals acting in a quasi-judicial capacity.

Here, the Subdivisions have not asserted that the Board lacked subject matter jurisdiction when it rendered its 1991 orders. Instead, the Subdivisions rely upon our decision in *Hacker v. Howe*, 72 Neb. 385, 101 N.W. 255 (1904), which held that actions by the Board which exceed its authority may be collaterally attacked.

In *Hacker*, a plaintiff-taxpayer sought an injunction to prevent the collection of taxes that resulted from an increase in valuation of several counties as ordered by the Board. The plaintiff claimed that the Board's action was null and void on the grounds that the Board had exceeded its powers and jurisdiction and that the statute under which the Board had acted was unconstitutional. We stated that "[t]he actions . . . of the state board of equalization in equalizing as between different counties, are in their nature *quasi* judicial, and are not subject to collateral attack except upon grounds of fraud, actual or constructive, or for the exercise of a power not conferred upon them by statute." (Emphasis in original.) *Id.* at 393, 101 N.W. at 258.

The Subdivisions do not contend that the Board's orders amounted to fraud. Rather, relying upon *Hacker*, the Subdivisions assert that they may state a cause of action collaterally attacking the Board's April 12 and June 14, 1991, orders

because they were "beyond the authority of the Board, illegal, based upon mistake and erroneous conclusions of law, unconstitutional, null and void, and erroneously omitting personal property from taxation . . . ." We therefore consider whether the Board's decision to recertify the values of the taxpayers' personal property was beyond the Board's authority.

At the time the Board addressed the taxpayers' protest, it was well established that the appropriate remedy for a taxpayer who had successfully challenged discriminatory taxation was to recertify the taxpayer's property at the same level as the favored taxpayer. In *Sioux City Bridge Co. v. Dakota County*, 105 Neb. 843, 182 N.W. 485 (1921), the bridge company claimed that the county board of equalization had arbitrarily assessed its property at 100 percent of its "true value," although the real estate in the county had been assessed at 55 percent of its true value. We stated that "when property is assessed at its true value, and other property in the district is assessed below its true value, the proper remedy is to have the property assessed below its true value raised, rather than to have property assessed at its true value reduced." *Id.* at 848, 182 N.W. at 487. The U.S. Supreme Court reversed, holding that the right of the taxpayer whose property is uniquely taxed at 100 percent of its true value is to have its assessment reduced to the percentage at which others are taxed even though this is a departure from the requirement of the statute. See *Sioux City Bridge v. Dakota County*, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923).

Accordingly, in *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), we applied the principles set out by the U.S. Supreme Court in *Sioux City Bridge* and held that where a taxpayer's property had not been assessed uniformly and proportionately with other property in the county, the assessment of the taxpayer's property at its actual value should be reduced to 44 percent of that value to equalize the value of the taxpayer's property with other property in the county. Similarly, in *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *cert. denied* 493 U.S. 1078, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990), we held that the taxpayers were entitled to have their personal property equalized with railroads and car companies

that had previously been subject to federal litigation and therefore reduced to zero valuation.

Therefore, we conclude that the Board's April 12 and June 14, 1991, orders are not subject to collateral attack. Although the Board was not correct when in tax years 1989 and 1990 it valued certain centrally assessed personal property at zero as a part of the equalization process for the respective years, its decision was made under an interpretation of our opinions in *Northern Natural Gas Co. v. State Bd. of Equal., supra,* and *Natural Gas Pipeline Co. v. State Bd. of Equal.,* 237 Neb. 357, 466 N.W.2d 461 (1991).

It was not until *MAPCO I* that we stated that the process of equalization could not be applied to property that is not taxed. In *MAPCO I,* we found that the taxpayers' proposed remedy of having their property "equalized" at zero percent was inappropriate.

However, the Board's 1991 orders were not in excess of the Board's authority to equalize taxes and therefore cannot be said to be null and void. See, *Natural Gas Pipeline Co. v. State Bd. of Equal., supra; Northern Natural Gas Co. v. State Bd. of Equal., supra.*

The Subdivisions' reliance upon our decision in *County of Adams I* is misplaced. We did not hold in *County of Adams I* that the Board's April 12 and June 14, 1991, orders exceeded the powers of the Board, nor did we find that such decisions were generally subject to collateral attack. Instead, we held that the petition in that case did not present a collateral attack, and therefore, we could not address it as such.

The right of a party to collaterally attack the validity of a prior order by the Board was set forth in *Richardson v. Board of Education,* 206 Neb. 18, 290 N.W.2d 803 (1980). In *Richardson,* we stated:

> It is clear that the School District took no steps to prosecute an appeal of any nature within 30 days of entry of the State Board's order, as required by Neb. Rev. Stat. §§ 25-1931 (Reissue 1975) and 84-917 (2) (Reissue 1976). Rather, it attempted to collaterally attack an order of the State Board which had long before become final. "A collateral attack upon a judgment will not lie unless the judgment is absolutely void. Where the court has jurisdiction

of the parties and the subject matter, its judgment is not subject to collateral attack because the judgment is only voidable and not void." *State ex rel. Casselman v. Macken*, 194 Neb. 806, 809, 235 N.W.2d 867, 869 (1975). "The rule against collateral impeachment of judicial decisions applies to the determinations of state and county officers or boards of officers, who, although not constituting a court, are called on to act judicially in matters of administration . . . ." 206 Neb. at 25-26, 290 N.W.2d at 808-09.

Here, the Subdivisions seek a declaration that the April 12 and June 14, 1991, orders of the Board were invalid or void. The orders have long since become final and are not subject to collateral attack by the Subdivisions. The Subdivisions had a right to appear before the Board and to appeal the Board's orders. The Subdivisions did not appear at the Board's hearings on remand and did not appeal from either of the Board's orders. The orders of the Board therefore constitute final judgments which were not appealed.

We find that the district court was correct in concluding that the Subdivisions' petitions did not set forth a cause of action to collaterally attack the Board's orders of April 12 and June 14, 1991. There being no basis upon which the Subdivisions can collaterally attack the judgments, the court was correct in sustaining the demurrers on the basis that the petitions failed to state a cause of action.

The judgment of the district court is affirmed.

AFFIRMED.

STEPHAN, J., not participating.

WHITE, C.J., concurs.