EDWARD V. LUCAS ET AL., APPELLANTS, V. BOARD OF EQUALIZATION OF DOUGLAS COUNTY, NEBRASKA, APPELLEE.

85 N. W. 2d 638

Filed October 25, 1957. No. 34242.

*Fitzgerald, Ross & O'Connor,* for appellants.

*Eugene F. Fitzgerald, John C. Burke,* and *Arthur D. O'Leary,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The controversy in this case relates to the valuation placed on real estate owned by Edward V. Lucas and his wife for taxation purposes and a claim of partial exemption of the property from liability to local taxation to the extent of $10,000 of the cost of the property which was paid with money received from the government of the United States by and for the use of Edward V. Lucas, a disabled veteran. Each of the claims was rejected by appellee and the district court. Appellants have continued the contest by this appeal.

Edward V. Lucas, referred to herein as appellant, a veteran of World War I, suffered a service-connected disability resulting in the amputation of his legs. He acquired and is the owner of Lot 4 in Tegtmeier's Second Addition in Douglas County. In 1954 he constructed a house thereon which was specially adapted for his use because of the nature of his disability. The house has ramps instead of stairs, wide hallways and doors to permit easy passage of a wheel chair, special

bathroom fixtures, and a double door in the bedroom of appellant to afford him direct and easy exit from the house in the event emergency withdrawal therefrom should be required. The house was constructed according to plans and drawings approved by and the regulations of the Veterans Administration. This agency furnished appellant $10,000 which was required to be and it was applied to the payment of that amount of the cost of the house constructed. The remittance of the grant of $10,000 made by the United States was payable to appellant and transmitted to and received by the Veterans Administration office in Omaha. Appellant endorsed the draft in blank in that office and the Veterans Administration applied the proceeds of it to the payment of that amount of the cost of the house.

The evidence offered by appellants as to the value of the property was as follows: Edward V. Lucas said the lot cost $3,750. The cost of constructing the house thereon was $21,000. The total cost of the whole property was $24,750. Repairs necessary because of faulty construction would, in his opinion, cost $2,000. His opinion was that the fair market value of the property was $20,000. He did not know the valuation for taxation of other residence properties in the neighborhood. There was no other evidence offered by appellants on this subject.

The county assessor of Douglas County testified that in his opinion the basic value of the lot was $2,080; that the basic value of the improvements thereon was $15,900; and that the basic value of the whole property was $17,980. The county assessor did not inspect the property but he had the report made by the tax appraisal board of the county. The county board of equalization sustained and adopted the basic value of the property as determined and fixed by the assessor and fixed the ratio of basic value to actual value at 70 percent.

The county assessor of Douglas County had held

that office since 1939. For the year 1956 he assessed the basic value of the lot of appellant at $2,080 and the basic value of the improvements on it at $15,900. The assessor did not inspect the property. He based his assessment upon his many years of experience in assessing property in that county and upon information gathered and reported to him by the tax appraisal board of the previous year. He testified that the valuation of the property of appellant compared favorably with valuations of comparable property in this area of the county. Appellants insist that the basic valuation of the property involved is excessive. They say that a basic valuation of $17,980, as fixed by the assessor, adopted by the board of equalization, and adjudicated by the district court, requires an actual value of the property of $25,685 because the basic value is 70 percent of the actual value. They also protest that there was no evidence produced by appellee to sustain an actual value in that amount. Appellants misconceive the party upon whom was cast the burden. They do not assert or attempt to establish that the assessed value of the property involved was not fairly and properly equalized when considered with the assessment of all other similar property. The only evidence offered by appellants was that of Edward V. Lucas and he stated that he had no information of the valuation placed on other comparable property in the neighborhood of his property. He testified only that his opinion of the fair market value of his property was $20,000.

The burden was on the property owner to establish the assessment was excessive. If the county assessor accepted the valuation of this property as determined and reported by the tax appraisal board, the presumption that he properly assessed the property would not exist but the burden would nevertheless be on the property owner to establish that the assessment was excessive. This court declared in Gamboni v. County of Otoe, 159 Neb. 417, 67 N. W. 2d 489: "The presumption

is that, when an officer * * * values property for assessment purposes, he acts fairly and impartially in fixing such valuation. * * * Where the assessor does not make a personal inspection of the properties, either by himself or a deputy, but accepts the valuations thereof fixed by a professional appraiser the presumption in favor of the assessment does not obtain. However, the burden in such case is still upon the protesting party to prove the assessment is excessive."

The evidence on behalf of appellants is not sufficient to satisfy the burden cast upon them in this case. In LeDioyt v. County of Keith, 161 Neb. 615, 74 N. W. 2d 455, it is said: "The burden imposed on the complaining taxpayer is not met merely by showing a difference of opinion between his witnesses and the county assessor or county board of equalization with regard to value unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain legal duty, and not mere errors of judgment. * * * Generally, the valuation of property for tax purposes by the proper assessing officers should not be overthrown by the testimony of one or more interested witnesses that the values fixed by such officers were excessive or discriminatory when compared with values placed thereon by such witnesses. Otherwise, no assessment could ever be sustained." The contention of appellants in this respect is not sustained.

The immunity of the property involved to local taxation to the extent of a value of $10,000 is claimed by virtue of an Act of Congress. The Act of Congress of August 12, 1935, Title 38, U. S. C. A., section 454a, contains the following: "Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from

taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments."

The payment of benefits in the sum of $10,000 above mentioned was made to appellant under a law of the United States relating to veterans within the terms of the Act of Congress described in the part thereof set out above. The proceeds of the grant were immediately upon receipt of them by appellant invested in the real estate owned by him and concerned herein. The exemption from taxation erected by the act applies only to "payments of benefits due or to become due." The real estate in which the benefits were invested by appellant does not qualify under the terms and limitations of the immunity granted by the act. Property in which benefits to veterans have been invested is excluded from this exemption.

Carrier v. Bryant, 306 U. S. 545, 59 S. Ct. 707, 83 L. Ed. 976, considered and interpreted the relevant Act of Congress. It is said therein: "The first sentence grants exemption from taxation, claims of creditors, attachment, levy or seizure under any legal process whatever. The things exempted are 'payments of benefits' due or to become due either before or after receipt by the beneficiary. * * * Investments purchased with money received in settlement of benefits are not such payments due or to become due. Accordingly, giving the words employed their ordinary meaning, the notes and bonds in question are not exempted by the first sentence in § 3. It left them, like other property, subject to taxation, claims of creditors, and legal process. * * * The second sentence of the section clearly recognizes the distinction between benefit payments and property pur-

chased with money therefrom. It declares the exemption provisions in the first sentence shall not attach to claims of the United States; also that exemption from taxation shall not extend to property purchased out of benefit payments. * * * We find nothing in the history or supposed purpose of the enactment adequate to support a construction not in accord with the ordinary import of the words employed."

Lawrence v. Shaw, 300 U. S. 245, 57 S. Ct. 443, 81 L. Ed. 623, 108 A. L. R. 1102, considered the relevant provisions of the Act of Congress of August 12, 1935, set out in part above, in respect to whether bank credits of a veteran which resulted from deposit of warrants received from the government in payment of benefits were exempt from local taxation when the deposits were made in the ordinary manner so that the proceeds thereof were subject to draft upon demand for the use of the veteran. The court therein said: "The provision of the Act of 1935 that the exemption should not apply to property purchased out of the moneys received from the Government shows the intent to deny exemption to investments, as was ruled in the Trotter case (290 U. S. 354). * * * We hold that the immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow from his investments but result from the deposit of the warrants or checks received from the Government when such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested."

Trotter v. Tennessee, 290 U. S. 354, 54 S. Ct. 138, 78 L. Ed. 358, contains this language: "The question is whether lands in Tennessee purchased by the guardian of a veteran with moneys received from the United States for the use of the disabled ward are subject to

taxation. * * * By the World War Veterans Act (Title 38 U. S. C. A., § 471 et seq.), 'The compensation, insurance and maintenance and support allowance * * * shall not be assignable; shall not be subject to the claims of creditors * * *; and shall be exempt from all taxation.' * * * Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. * * * On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers. The moneys payable to this soldier were unquestionably exempt till they came into his hands or the hands of his guardian. * * * We leave the question open whether the exemption remained in force while they continued in those hands or on deposit in a bank. * * * Be that as it may, we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. Veterans who choose to trade in land or in merchandise, in bonds or in shares of stock, must pay their tribute to the state. If immunity is to be theirs, the statute conceding it must speak in clearer terms than the one before us here." See, also, Raburn v. Board of County Commissioners of McIntosh County, 168 Okl. 4, 31 P. 2d 840; Ford v. Harrington, 189 Ark. 48, 70 S. W. 2d 49; City Council of Augusta v. Ransom, 179 Ga. 179, 175 S. E. 497; State v. Wright, 224 Ala. 357, 140 So. 584; Johnson v. Board of Commissioners of Yankton County, 61 S. D. 372, 249 N. W. 683; Annotation, 108 A. L. R. 1105.

The clear intent of the applicable Act of Congress is that payment of benefits due or to become due shall be exempt from taxation before or after receipt thereof by the veteran so long as they are not invested by him

but that the immunity from taxation does not extend to property purchased in whole or in part with the proceeds of the benefits granted him by the government. The exemption is limited to the one situation when payments of benefits are due or to become due. The payment of the grant made to appellant involved herein had departed from that situation and immunity from taxation of the proceeds of the grant was dissipated when investment of the proceeds was made by the beneficiary.

The Legislature of 1955 passed what is sometimes referred to as the basic value law. Laws 1955, c. 289, § 1, p. 918; § 77-112, R. S. Supp., 1955. Its invalidity is attempted to be established by appellants on constitutional grounds by a discussion in their brief. An issue of unconstitutionality of the act may not be made in this appeal because it was not made an issue before trial in the district court. The first mention of the subject in the record is an assertion in the motion for a new trial filed by appellants. The assignments of error made by them omit any reference to invalidity of the statute. The argument of appellants that the statute is invalid lacks foundation and must be disregarded in the consideration and decision of this appeal. Johnson v. Richards, 155 Neb. 552, 52 N. W. 2d 737.

The judgment should be and it is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.