A.J. SCRIBANTE AND LYNDA H. SCRIBANTE, APPELLEES, V. DOUGLAS COUNTY BOARD OF EQUALIZATION, APPELLANT.

588 N.W.2d 190

Filed January 12, 1999.    No. A-98-051.

William T. Ginsburg for appellant.

Robert J. Huck and Robert S. Lannin, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, P.C., for appellees.

IRWIN, Chief Judge, and SIEVERS and MUES, Judges.

SIEVERS, Judge.

The Douglas County Board of Equalization (Board) appeals the order of the Nebraska Tax Equalization and Review Commission (Commission) which reversed the Board's 1997 valuation of $1,305,000 for a home located in Omaha, Nebraska, and set its value for property tax purposes at $741,400.

## BACKGROUND

A.J. Scribante and Lynda H. Scribante own property located at 401 Fairacres Road in Omaha. The subject property, a two-story brick home with over 6,000 square feet of finished living area plus a 210-foot by 230-foot lot, was purchased by the

Scribantes in 1991 for $1,293,000. A.J. Scribante testified that the house had not been remodeled since that time.

It is important to recount the events for the 1996 tax year, the tax year prior to that involved in this appeal. For the 1996 tax year, the Board valued the Scribantes' property at $1.1 million. The Scribantes filed a protest with the Board alleging that the assessed valuation of their property exceeded the valuation of other similar property in the neighborhood. The Scribantes argued that there was a lack of "proportionate and uniform valuation regarding this property, which results in a lack of uniformity and equality required by law." The Scribantes requested that the proposed valuation of $1.1 million be reduced to $619,000. The Board denied the protest, and the Scribantes appealed to the Commission.

After trial, the Commission released its findings and orders about the 1996 tax year, dated April 15, 1997. The Commission decided that the Board's action in denying the Scribantes' protest was arbitrary and unreasonable. The Commission concluded that the evidence established that "in the Fairacres Subdivision, there is a lack of uniformity and proportionality. . . . [T]hat this lack of uniformity and proportionality arises from the fact that the County reappraises property in the Subdivision when the property is sold, when a building permit is issued, or when the State intervenes." The Commission reduced the valuation of the Scribantes' home from $1.1 million to $875,256. The Board did not appeal this ruling.

During the hearing on the 1996 protest, the Board introduced testimony that the Fairacres subdivision would be reappraised in its entirety in 1997. The Commission noted, "If such a reappraisal is undertaken, the lack of uniformity and proportionality will be addressed."

For the 1997 tax year, the county assessor increased the value of the Scribantes' property to $1,305,000. Using the Commission's 1996 valuation of $875,256 for the property, this constituted a 49-percent increase in value in 1 year. The Scribantes once again filed a protest with the Board. The Board approved the $1,305,000 valuation, and the Scribantes timely appealed to the Commission, asking that the valuation be reduced to $687,000.

A hearing was held before the Commission on December 15, 1997. The Scribantes argued that there was still gross inequality in the Fairacres neighborhood with respect to valuation of property for tax purposes. The Scribantes alleged that property sold within the last 10 years or which had been substantially remodeled was uniformly valued at a much higher rate on a per-square-foot basis than other property in the neighborhood. A.J. Scribante testified that his protest was not a challenge to the Board's finding of an increased market value of his home, but, rather, that his only concern was whether his property was valued in "an equal manner as the other properties" in the Fairacres neighborhood.

*Scribantes' Evidence.*

Matthew Wilson, a licensed real estate appraiser, testified on behalf of the Scribantes as an expert witness, and he provided five methods of valuing the Scribantes' home. Wilson testified that in an attempt to determine whether property in Fairacres was valued uniformly, he chose 32 houses in the subdivision which he deemed to be comparable to the subject property. Wilson's basis for choosing the 32 properties was "[p]roximity to the subject and two-story and quality of construction." Wilson compared the assessed value of each property as of January 1, 1996, with the value of that same property on January 1, 1997, and if it changed, he calculated the percentage of increase or decrease in value. Wilson's findings, included in exhibit 7 and titled "1997 Assessed Value Changes in Fairacres - Omaha," are quoted below:

| Address | Percentage Change | Comments |
|---|---|---|
| [1]  525 Fairacres | -13% | |
| [2]  6614 Underwood | 0% | |
| [3]  206 Fairacres | 0% | . . . |
| [4]  6610 Davenport | 0% | . . . |
| [5]  658 No. 63rd | 0% | |
| [6]  6500 Prairie | +4% | |
| [7]  220 Fairacres | +4% | . . . |
| [8]  6435 Prairie | +6% | |
| [9]  426 Fairacres | +7% | |
| [10] 6451 Cuming | +7% | |

| | | |
|---|---|---|
| [11] 6611 Underwood | +10% | |
| [12] 6469 Cuming | +10% | |
| [13] 6300 Dodge | +10% | . . . |
| [14] 6445 Prairie | +11% | |
| [15] 215 Fairacres | +11% | . . . |
| [16] 650 No. 63rd | +11% | |
| [17] 702 Hackberry | +12% | |
| [18] 717 Hackberry | +12% | |
| [19] 423 Fairacres | +12% | . . . |
| [20] 726 Hackberry | +13% | |
| [21] 412 No. Elmwood | +13% | . . . |
| [22] 652 No. 66th | +14% | |
| [23] 407 No. Elmwood | +14% | |
| [24] 106 No. 67th | +14% | |
| [25] 402 Fairacres | +15% | . . . |
| [26] 425 Fairacres | +15% | . . . |
| [27] 6545 Prairie | +15% | . . . |
| [28] 216 Fairacres | +15% | . . . |
| [29] 400 No. Elmwood | +16% | |
| [30] 604 No. 65th | +26% | |
| [31] 401 No. Elmwood | +33% | |
| [32] 710 Hackberry | +39% | . . . |
| 401 Fairacres | +49% | [Subject property] |
| 6450 Prairie | +140% | [Sale to Theisen] |

**The average increase for the 32 properties** (excluding the subject property and the sale to Theisen) **is 11%.** The sale to W. Theisen is excluded because it appears to have increased due to the recent sale. The subject is excluded to find the average increase for the other property in the neighborhood.

(Emphasis supplied.)

Wilson testified that he used Douglas County property record cards as his source for the above calculations. Wilson concluded that based on the above percentages, the Fairacres neighborhood had not been "equalized" in 1997, despite the Board's evidence that the neighborhood had been reappraised.

■ Wilson also prepared an equalization summary, in evidence as exhibit 5, on 102 two-story homes in Fairacres based on records from the Douglas County assessor's office. Wilson

testified to using two-story homes as his "subclass" in the summary. The information on each piece of property, which varied considerably, included year built, lot size, frontage, lot assessed value, lot assessed value per square foot, house size, house assessed value, and house assessed value per square foot. As a result of the summary, Wilson concluded that the value per square foot of the 102 properties averaged $81.52. Wilson testified that he averaged the assessed value per square foot in accordance with Neb. Rev. Stat. § 77-1504 (Reissue 1996), which states in part:

> For purposes of equalization of the valuation of any protested real property, the county board of equalization shall make its adjustment so that the value of the protested property compares to the average level of value of the class or subclass of property in which the protested property is categorized.

Wilson then took what he considered to be the square footage of the subject property, 6,118 (a figure which was contested at the hearing and the Commission eventually found the square footage to be 7,528, apparently due to finished attic and basement space), times $81.52 to compute a valuation, for improvements, of $498,739. Wilson then added the land value of the subject property, $85,300, to compute an "equalized" valuation of $584,039. Wilson would later testify that this calculation was the figure he would recommend to any county board as the equalized value of the subject property.

Wilson employed a third method of calculation using the three homes in the Fairacres subdivision which the Commission in the Scribantes' 1996 appeal found to be "comparable" to the subject property. The assessed values per square foot in 1996 of the three comparables were as follows:

| Address | Buildings | # Sq. Ft. (Imp.) | Asses. Value/ Sq.Ft. (Imp.) |
| --- | --- | --- | --- |
| 425 Fairacres Road | $818,500 | 6,229 | $129.12 |
| 207 Fairacres Road | $494,100 | 5,652 | $ 87.42 |
| 215 Fairacres Road | $419,200 | 5,369 | $ 78.08 |

Wilson determined that the average assessed value per square foot on the three homes was $98.21. He then applied an 11-percent average increase, determined by Wilson to be the average

increase in assessed valuation using the 32 properties evaluated in his 1997 assessed value changes worksheet, to compute a 1997 average assessed value per square foot on the comparables of $109.01. Multiplying this by his square footage for the Scribantes' home (6,118), Wilson estimated an equalized value of $666,920 for improvements. He then added the land value to determine an equalized value for the subject property of $752,220.

For his fourth method of valuation, Wilson followed what he believed to be the holding in *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984). *Kearney Convention Center* holds that when determining an equalized value, when there is a lack of uniform assessment, the lowest value in a subclass should be utilized. Wilson took the lowest value per square foot from the 1996 valuation of the three aforementioned comparables, $78.08, increased it by 11 percent to account for the change from 1996 to 1997, and arrived at $86.67. He multiplied that figure by the square footage of the subject property (6,118) to arrive at an equalized value of $530,247 for improvements. Wilson then added land value to determine a hypothetical equalized value of $615,547 for the subject property.

Finally, Wilson testified that in the Scribantes' appeal of the 1996 valuation, he had used 12 comparables to determine an equalized value of $619,000 for the subject property. Wilson then multiplied this figure by 11 percent to increase the value in order to compute an equalized value of $687,097 for 1997. Wilson's testimony on direct concluded with the following exchange:

> Q: . . . [B]ased on the information that you gathered from the Douglas County records, and your knowledge of the area in general of the Fairacres area, and based on the results of the January 1st, '97 valuation changes, do you have an opinion as to whether or not the January 1st, 1997, evaluation is valid as applied to the Scribantes, from an equalization point of view?
>
> . . . .
>
> A: That it's not equalized with the other properties in the same subclass.

Q: Did you so find in your research of the records that the properties that have been sold are uniformly appraised at a higher square foot value than those that have not been sold.

A: Yes, they are.

Q: And does that overall result in an equalization for this neighborhood?

A: No, it does not.

In summary, under five different methods, Wilson arrived at valuations for the subject property which are roughly half of that assessed by the Board.

*Board's Evidence.*

Frank Bemis, the Douglas County assessor, testified on behalf of the Board. Bemis testified that the 1997 valuation of the subject property, in his opinion, was on the low side in relation to its actual value. To support this, Bemis testified that the Scribantes were attempting to sell the subject property for $2.7 million. Bemis' testimony focused primarily on whether the assessor's recommended appraisal was consistent with the actual value of the subject property, an issue which A.J. Scribante specifically testified was not contested. Bemis' testimony did not address the issue of uniform and proportionate valuation in the Fairacres subdivision.

Robert Rice, Douglas County chief deputy assessor, also testified on behalf of the Board. Rice testified that the Fairacres subdivision had been appraised for the 1997 tax year and explained that when an appraisal of a subdivision is done, it is assigned to a certain appraiser, in this case, Leonard Marasek. Marasek did not testify before the Commission; instead, Rice explained what Marasek did when appraising Fairacres. For the sake of efficiency, we quote Rice's testimony concerning the methods Marasek allegedly used in appraising Fairacres:

The first thing he'll do, he'll get all the sales back to probably 1990, every sale that has taken place. He'll go through the subdivision, familiarize himself with all the sales, come up with the square foot price of homes, whether they are two-story, brick, frame, story-and-a-half, ranch, or whatever, to try to make sure he's got some kind

of a guideline to appraise all these homes. Then what he will do, he will start with lot number one, he will have all the property record cards in the whole subdivision, he'll pull up in front of house number one, lot number one, he will look at the property record card, look at the square footage, look at the measurement and make sure everything is correct. . . . He will then take the information that he has, all the characteristics, and make all his notes as to the home. The quality of the construction is very important. With all his notes, he will categorize it into the type of property he thinks it should be. . . . When he's all finished, then he will come back into the office, he will go through all his sales, all his notes, and look at all his notes, and he will arrive at a value on that property based on comparable sales, so much per square foot.

Rice testified that subsequent to the reassessment of properties in Fairacres, he determined that the "average increased assessed value" of property in the area was 12.5 percent. Rice stated that before Marasek appraised the neighborhood, Rice proposed that an average increase of 15 percent appeared appropriate for property in Fairacres. Rice testified that an appraiser, such as Marasek, would not "go by a percentage increase" and that in the case of the subject property, "we felt the appropriate value for January 1 of '97 was $1,305,000." Rice testified that in valuing the subject property at $1,305,000, the county assessor's office ignored the $875,000 valuation for the tax year 1996 set by the Commission in its April 15, 1997, decision.

Robert Ogden, a real estate appraiser, also testified on behalf of the Board. Ogden attacked Wilson's comparables as being more dissimilar than similar. Ogden testified that in assessing a neighborhood such as Fairacres: "You'd need to make sure that you had homes that are of similar quality, similar age, not so much age as in chronological age, but effective age . . . . I didn't see any of those items particularly adjusted for on this equalization study." Ogden also stated: "It [Fairacres] would be an assessor's nightmare type of neighborhood to try to do an analysis on the whole neighborhood and say this neighborhood is treated equally based on some standard form of rating like square footage without taking into consideration a lot of

things." However, Ogden did not set forth a precise method of determining whether the Fairacres subdivision had been valued uniformly in 1997.

In a docket entry dated December 24, 1997, the Commission, with one commissioner dissenting, reversed the action of the Board, finding that "the decision of the Douglas County Board of Equalization which set the assessed value of the subject property for purposes of taxation at $1,305,000 for tax year 1997 was both unreasonable and arbitrary." The Commission set the value of the subject property at $741,400, calculated as follows:

Land           $ 85,300
Improvements   $656,140   (7,528 square feet times $87.16
                           per square foot)
Total          $741,400

In its findings of fact, the Commission found that the most comparable properties, according to the evidence, were parcels 29, 52, and 54 from Wilson's equalization summary of 102 homes, "since those properties were built between 1907 and 1927 (the subject property was built in 1917), all are two-story houses, all have between 5,000 and 8,000 square feet of living area, and all are located in Fairacres Subdivision, a unique neighborhood in Douglas County." The three properties found comparable to the subject property by the Commission are detailed below:

521 North Elmwood Road (parcel 29) — two-story brick home with 7,271 square feet, built in 1926 and remodeled in 1996. This home was assessed a value of $562,400 for 1997 for improvements only ($77.35 per square foot).

215 Fairacres Road (parcel 52) — two-story brick home with 5,369 square feet, built in 1917 and never remodeled. This home was assessed at $473,200 for 1997 for improvements only ($88.14 per square foot).

525 Fairacres Road (parcel 54) — two-story brick home with 6,729 square feet, built in 1914 and never remodeled. This home was assessed a value of $586,500 for 1997 for improvements only ($87.16 per square foot).

Of these three properties, the Commission had used only 215 Fairacres Road in arriving at its valuation for 1996 in its April

15, 1997, decision. For 1997, the Commission used the $87.16 per square foot from 525 Fairacres Road in determining the equalized value of the Scribantes' home, describing that figure as "[t]he median assessed value of the three comparable properties . . . of the improvements only." The Commission noted that the Board's witnesses were unable to explain why parcel 52, 215 Fairacres Road, in particular, a home built the same year as the Scribantes' home, was assessed at only $88.14 per square foot when the Scribantes' home was assessed at $162.02 per square foot. The Commission set the total valuation for the Scribantes' property at $741,400. The Board then appealed to this court.

## ASSIGNMENTS OF ERROR

Restated, the Board argues that the Commission failed to (1) properly apply the standard of review mandated by Neb. Rev. Stat. § 77-1511 (Reissue 1996), (2) afford the action of the Board a presumption of correctness, and (3) apply the proper standard of proof. The Board also argues that the Commission erred (1) in failing to find the Board's action was supported by sufficient evidence and (2) in finding that the value set by the Board was unreasonable and arbitrary.

## STANDARD OF REVIEW

Our review of a final decision of the Commission is for error on the record of the Commission. Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 1998). When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Lancaster Cty. Bd. of Equal. v. Condev West, Inc.*, 7 Neb. App. 319, 581 N.W.2d 452 (1998).

## ANALYSIS

*Standard of Review.*

The Board assigns as error the Commission's failure to apply the proper standard of review under § 77-1511. However, under the corresponding argument portion of its brief, the Board fails to articulate how we would reach the conclusion that the Commission used an incorrect standard, other than the fact that

the Board lost the appeal. The Board's "argument" merely sets forth the Commission's standard of review, our standard of review with respect to the Commission's decision, and the Commission's finding that the Board's decision was unreasonable and arbitrary. The finding, incidentally, comports with the correct standard of review for the Commission under § 77-1511. We find nothing in the Commission's decision of December 24, 1997, to show that it used an improper standard of review of the Board's valuation.

*Standard of Proof and Sufficiency of Evidence.*
■ The Board's argument that the Commission failed to apply the correct standard of proof is that the Commission "threw out the necessity of the taxpayer to prove by clear and convincing evidence that the Douglas County Board of Equalization's valuation was grossly excessive when compared with valuations place[d] on other similar property." Brief for appellant at 11-12. See *Lucas v. Board of Equalization*, 165 Neb. 315, 85 N.W.2d 638 (1957) (burden rests on taxpayer to establish by clear and convincing evidence that valuation placed upon his or her property when compared with valuations placed upon other similar property is grossly excessive and is result of systematic exercise of intentional will or failure of plain legal duty, and not mere error of judgment). See, also, *J.C. Penney Co. v. Lancaster Cty. Bd. of Equal.*, 6 Neb. App. 838, 578 N.W.2d 465 (1998).

We understand the essence of the Board's argument on this assignment to be that the valuation placed on the Scribantes' home was not arbitrary or unreasonable because it reflected the property's actual value. While there is compelling evidence that the property may well be worth substantially more than the Commission's valuation, including the fact that the Scribantes paid $1,293,000 for the property in 1991, the Board's argument begs the question presented by this appeal. The Board's argument misinterprets the Scribantes' position and ignores the core finding of the Commission's April 15, 1997, decision dealing with the Board's 1996 valuation of this same property. The Commission, when dealing with the prior year's assessment, made abundantly clear its conclusion that because property in

the Fairacres subdivision was only revalued when a sale occurred, a building permit was issued, or the former State Board of Equalization and Assessment intervened, that properties in the subdivision had been systemically undervalued. The Commission's comprehensive 20-page order on the 1996 valuation was highly critical of appraisal practices in the Fairacres subdivision and of the Board's failure to equalize values despite its statutory duty to do so. As a result, the Board was on notice that the Commission perceived a problem with its valuation of property in the Fairacres subdivision.

Therefore, the issue presented to the Commission in this second proceeding involving the Scribantes' home was not whether the 1997 assessed value of the subject property truly reflected its market value. Rather, the issue was whether the subject property was uniformly and proportionately valued when compared to similarly situated residential property. The lodestar is that "[t]axes shall be levied by valuation uniformly and proportionately upon all real property." Neb. Const. art. VIII, § 1. Real property is tangible property under Nebraska law, and it must be equalized and taxed uniformly pursuant to the foregoing constitutional provision. *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991). The Board's entire brief focuses on market value when the issue concerning the Scribantes' property has been, and remains, equalization. Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value. *MAPCO Ammonia Pipeline v. State Bd. of Equal., supra.*

Section 77-1511 mandates that the Commission shall affirm any action taken by a county board of equalization unless evidence is adduced establishing that such action was unreasonable or arbitrary, or unless evidence is adduced establishing that the property of the appellant is assessed too low. There is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. *J.C. Penney Co. v. Lancaster Cty. Bd. of Equal.*, 6 Neb. App. 838, 578 N.W.2d 465 (1998). That presumption remains until there is competent evidence to the contrary presented, at which point

the presumption disappears. *Id.* From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. *Id.* The burden of showing such valuation to be unreasonable rests upon the taxpayer who appeals the board's action. *Id.*

The Scribantes offered into evidence, through Wilson's equalization summary, a property record screen printout of a home located at 215 Fairacres Road. The record reveals that this property was considered by all parties to be comparable to the property at issue. Both homes are two-story with brick exterior and were built in 1917. The property at 215 Fairacres Road has 5,369 square feet compared to the subject property's 7,528 square feet, using the figure for finished square footage ultimately settled on by the Commission. The Commission found it significant that the Board's witnesses were unable to explain why the home at 215 Fairacres Road was valued at $88 per square foot while the subject property was valued at $162.02 per square foot, nearly twice the value per square foot of the comparable. Given the agreement by all of the parties that 215 Fairacres Road was comparable to the Scribantes' home, we too find the disparity in valuation to be significant to the point that it would carry the Scribantes' burden to rebut the presumption of correctness in favor of the Board's assessment. Once the presumption was rebutted, as we find that it was, then the Scribantes still have the burden to show that the Board's valuation was unreasonable. See *Lancaster Cty. Bd. of Equal. v. Condev West, Inc.*, 7 Neb. App. 319, 581 N.W.2d 452 (1998).

Wilson's equalization summary also included two other homes which the Commission deemed comparable. The first property was located at 521 Elmwood Road, which was valued by the county assessor in 1997 at $77.35 per square foot, and the second property was located at 525 Fairacres Road and valued at $87.16 per square foot. The values per square foot for these comparables show that something is amiss with the Board's valuation of either the Scribantes' home or the comparables.

After our review of the record, we agree with the Commission's conclusion that the Scribantes had introduced evidence that their property was "not uniformly and proportionately valued when compared to similarly situated residential real prop-

erty," given that the Board's assessment of the property's value was $162.02 per square foot. The Commission, therefore, concluded that the valuation of $1,305,000 was unreasonable and arbitrary. We agree.

The purpose of equalization of assessments is to bring assessments from different parts of the taxing district to the same relative standard, so that no one part is compelled to pay a disproportionate share of the tax. *County of Adams v. Nebraska State Bd. of Equal.*, 252 Neb. 847, 566 N.W.2d 392 (1997).

In addition to Wilson's five equalization calculations, the Scribantes introduced evidence that the Board only revalued property located in the Fairacres subdivision when a sale occurred, a building permit was issued, or the former State Board of Equalization and Assessment intervened. The Commission had so concluded in its decision on the 1996 valuation. The Board failed to contradict the Scribantes' evidence with respect to the disproportionate valuation of properties in Fairacres other than to attack Wilson's equalization summaries and calculations as inconclusive and unreliable. The only evidence put on by the Board was testimony that the $1,305,000 valuation was the actual value of the subject property. We conclude that it was neither unreasonable nor arbitrary, based on the aforementioned evidence and the equalization summaries, for the Commission to conclude that the subject property was assessed at a higher level than similarly situated property. To set the valuation of similarly situated property, i.e., comparables, at materially different levels, i.e., value per square foot, is by definition, unreasonable and arbitrary, under the Nebraska Constitution. Therefore, we turn to the remedy utilized by the Commission.

In *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), the Nebraska Supreme Court followed the lead of the U.S. Supreme Court in *Sioux City Bridge v. Dakota County*, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923), and reduced the taxpayer's assessment, which all involved agreed had been set at the property's market value. The Nebraska Supreme Court held that because the taxpayer's property had not been assessed uniformly and proportionately when

compared with other real property in the county, the assessment of the taxpayer's property had to be reduced. The evidence in *Kearney Convention Center* was that the agricultural land in the county was assessed at 44 percent of its market value, whereas the taxpayer's hotel property was assessed at 100 percent of its market value. Therefore, the remedy elected by the court was to reduce the assessment against the hotel to 44 percent of its value to equalize the value of the taxpayer's property with other property in the county. The court noted that its conclusion was based on the principle that " 'where it is impossible to secure both the standards of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.' " *Kearney Convention Center*, 216 Neb. at 304, 344 N.W.2d at 626.

Here, the conclusion is inescapable that there is disproportionate valuation of property in the Fairacres subdivision. The Scribantes only have to pay their fair share of the real estate tax, which means equally and proportionately with that of their similarly situated neighbors. See *County of Adams*, 252 Neb. at 855, 566 N.W.2d at 398 (reciting that "it was well established that the appropriate remedy for a taxpayer who had successfully challenged discriminatory taxation was to recertify the taxpayer's property at the same level as the favored taxpayer"). The evidence makes it difficult to know whether the Scribantes' property is assessed too high or the comparables are assessed too low, but the disparate treatment is obvious. And, either way, discriminatory treatment of the Scribantes' property has been established. If a taxpayer's property is assessed in excess of the value at which others are taxed, then the taxpayer has a right to relief. *AT&T Information Sys. v. State Bd. of Equal.*, 237 Neb. 591, 467 N.W.2d 55 (1991).

Since the Douglas County Board of Equalization remains fixated on the market value of the Scribantes' property, while seemingly ignoring the Nebraska Constitution's requirements for proportionate and equal taxation, the remedy is clear. The Scribantes are entitled to have their property valuation for real estate tax purposes reduced to reflect the valuations levied against their comparably situated neighbors. This is what the Commission did.

We conclude that the Commission's decision was neither arbitrary, capricious, nor unreasonable, is supported by competent evidence, and is in conformity with the law. We affirm the valuation of $741,400 for the subject property for the 1997 tax year.

AFFIRMED.