TJ 2010 Corporation, appellant, v.
Dawson County Board of
Equalization, appellee.
___ N.W.2d ___

Filed June 23, 2015.     No. A-14-660.

1. **Taxation: Judgments: Appeal and Error.** Decisions rendered by the Tax Equalization and Review Commission shall be reviewed by an appellate court for errors appearing on the record of the commission.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Taxation: Appeal and Error.** Questions of law arising during appellate review of Tax Equalization and Review Commission decisions are reviewed de novo on the record.
4. **Taxation: Valuation: Presumptions: Proof: Appeal and Error.** There is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board.
5. **Taxation: Valuation: Proof.** The burden of proof is on the taxpayer to establish the taxpayer's contention that the value of the taxpayer's property has been arbitrarily or unlawfully fixed by the county board of equalization at an amount greater than its actual value, or that its value has not been fairly and properly equalized when considered in connection with the assessment of other property and that such disparity and lack of uniformity result in a discriminatory, unjust, and unfair assessment.
6. ____: ____: ____. The burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the taxpayer's property, when compared with valuations placed on other similar properties, is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain legal duty, and not mere errors of judgment.
7. **Evidence: Words and Phrases.** Competent evidence is evidence that is admissible and tends to establish a fact in issue.
8. ____: ____. Clear and convincing evidence is evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.

9.  **Constitutional Law: Statutes: Appeal and Error.** To raise a valid challenge
    to the constitutionality of a statute, a litigant is required to properly raise and
    preserve the issue before the trial court.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Patrick M. Heng, of Waite, McWha & Heng, for appellant.

Katharine L. Gatewood, Deputy Dawson County Attorney, for appellee.

Irwin, Pirtle, and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

TJ 2010 Corporation (TJ) appeals the order of the Tax Equalization and Review Commission (TERC) affirming the decision of the Dawson County Board of Equalization (Board) regarding the 2013 taxable value of a hotel owned by TJ. Because we find that TJ failed to establish by clear and convincing evidence that the county's valuation was arbitrary or unreasonable, we affirm TERC's decision.

## BACKGROUND

TJ owns property in Gothenburg, Dawson County, Nebraska. The subject property is a 44,000-square-foot hotel operating under a franchise, with 74 guestrooms, a swimming pool, a small meeting room, and a breakfast area. The property is located right next to Interstate 80. It was built in 2010 for approximately $4 million.

The Dawson County assessor determined that the value of the property was $4,510,230 for tax year 2013. TJ protested the assessment to the Board and requested a valuation of $2.8 million. The Board determined that the taxable value was $4,510,230, as originally assessed. TJ appealed the Board's decision to TERC. A hearing was held before TERC, during which the following evidence was adduced:

Terry Jessen is the president and sole owner of TJ, which owns and operates the hotel at issue in Gothenburg. Jessen testified that the property was constructed with funds secured

from his personal contributions, a mortgage, and tax increment financing. As part of the tax increment financing agreement with the city of Gothenburg, he agreed not to request a tax valuation of less than $2.8 million in any subsequent tax protests or appeals.

Jessen owns five hotels in Nebraska and one in Wyoming. He testified that although he is not an appraiser, he is very familiar with the market value of hotels and the various methods of valuation. He opined that the most important method for valuing hotels is the income stream approach, which he determines by using a multiplier of the property's annual gross revenue averaged over the past 3 years. He indicated that in his experience, the appropriate multiplier for most mainstream hotels is between 2.8 and 3.

Jessen submitted the property's profit and loss statements for the year 2013, which indicate that the gross revenue for 2013 was $1,097,000. Using his income stream approach with a multiplier of 3, Jessen opined that the actual value of the property was approximately $3,291,000. He explained that the value would be even lower if he had used the average annual gross revenue over the past 3 years, rather than just the gross revenue for 2013, because the property's revenue increased each year from 2011 to 2013. He testified that if the property were placed on the market for sale, he would be able to find a buyer in that price range.

Mark Stanard is a licensed appraiser that was contracted by the county assessor to determine the value of the subject property as of January 1, 2013. Stanard testified that he used both the cost approach and the income approach to calculate the value of the property. Stanard opined that the income approach is generally more applicable to income-producing properties, but that for newer or unique properties such as this one, the cost approach is a better indicator of actual value.

Stanard testified that the cost approach is determined by calculating the replacement cost new, less depreciation, plus land. To determine the property's value under the cost approach, Stanard utilized the 2010 "Marshall Swift costing tables," which indicated a value of $4,546,446. He acknowledged that the more current version of the tables would have

been more accurate in determining the actual value of the property as of January 1, 2013.

Stanard calculated the property's value under the income approach by estimating the property's potential gross income (average room rate multiplied by the total number of rooms for 365 days), then deducting estimated vacancy and expense rates to determine the estimated net operating income, and then dividing that by a market capitalization rate. Stanard testified that he used market data, rather than actual data, to estimate the property's room rate, vacancy rate, expense rate, and capitalization rate. This approach yielded a valuation of approximately $4,538,000.

Jessen criticized the use of market data in Stanard's income approach. He explained that Stanard's analysis applied an estimated vacancy rate of 30 percent, whereas the property's actual vacancy rate is 45.13 percent. Similarly, Jessen testified that Stanard's approach assumed an average room rate of $99, while the property's actual average room rate is only $78.91. In response, Stanard testified that he did not have access to the property's profit and loss statements when he conducted his income analysis, but that even if he had, he would have elected to use market data instead of the property's actual figures due to concerns that the property's actual income had not yet stabilized.

Stanard testified that he did not conduct a full analysis under the sales comparison approach due to the lack of truly comparable properties. However, he did provide a list of "the most comparable sales we could find . . . simply to supplement or to support the assessed value based on sales." Stanard explained that if he had done a full sales comparison analysis, he would have made adjustments for variables such as age, location, functional utility, quality, and condition of the comparable properties. Stanard acknowledged that the capitalization rate and other market factors used in his income analysis were derived from this list of comparable sales, even though he did not make necessary adjustments to account for the differences between these comparable properties and the subject property. Jessen asserted that truly comparable properties

would need to be located along Interstate 80 in a similarly sized town to Gothenburg that could not be classified as a destination location.

TERC concluded that TJ provided competent evidence to rebut the presumption that the Board had faithfully performed its duties and had sufficient competent evidence to make its determination. It criticized Stanard's valuation for using outdated costing tables in the cost approach and for using market factors derived from comparable sales without making the necessary adjustments to the comparable properties. However, it determined that TJ's valuation method was not a commonly accepted real property appraisal method and was not supported by market data. Therefore, it found that while there were concerns about the reliability of Stanard's appraisal, there was no market data received in evidence to support a different opinion of any of the income approach factors. Thus, it concluded that TJ failed to present clear and convincing evidence that the Board's valuation was unreasonable or arbitrary.

## ASSIGNMENTS OF ERROR

TJ assigns, summarized and restated, that TERC erred in (1) determining that TJ failed to establish by clear and convincing evidence that the county's valuation was arbitrary or unreasonable, (2) failing to apply the proper statutory standard of review, and (3) denying TJ due process by applying an unconstitutional presumption in Neb. Rev. Stat. § 77-5016(9) (Cum. Supp. 2014).

## STANDARD OF REVIEW

[1-3] Decisions rendered by TERC shall be reviewed by an appellate court for errors appearing on the record of the commission. *Darnall Ranch v. Banner Cty. Bd. of Equal.*, 276 Neb. 296, 753 N.W.2d 819 (2008). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *Id*.

## ANALYSIS

*Reasonableness of County's Assessment.*

TJ assigns that TERC erred in determining that TJ failed to establish by clear and convincing evidence that the county's valuation was arbitrary and unreasonable. In support of this assignment of error, TJ argues that TERC erred in failing to accept TJ's valuation of the property, and by accepting the county's flawed valuation.

[4] Under § 77-5016(9), TERC's standard of review in appeals from a board of equalization is as follows:

> In all appeals, excepting those arising under section 77-1606, if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, [TERC] shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.

The Nebraska Supreme Court has construed this statutory standard of review to mean that

> "'[t]here is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board.'"

*Zabawa v. Douglas Cty. Bd. of Equal.*, 17 Neb. App. 221, 224-25, 757 N.W.2d 522, 526 (2008), quoting *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008).

Here, TERC determined that there was competent evidence to rebut the statutory presumption in favor of the Board, and

the county does not challenge that finding on appeal. Thus, TJ presented competent evidence to overcome the presumption that the Board faithfully performed its official duties in making an assessment and acted upon sufficient competent evidence to justify its action. From that point forward, the reasonableness of the county's valuation became a question of fact based upon all the evidence presented, and the burden of showing such valuation to be unreasonable rested upon TJ. We find, based on the evidence presented and the factual findings set forth in TERC's order, that TJ failed to meet its burden of establishing by clear and convincing evidence that the valuation adopted by the Board was arbitrary and unreasonable.

[5,6] In *Omaha Country Club v. Douglas Cty. Bd. of Equal.*, 11 Neb. App. 171, 645 N.W.2d 821 (2002), we addressed what is required after the presumption of § 77-5016(9) has been overcome. We said:

> The burden of proof is on the taxpayer to establish the taxpayer's contention that the value of the taxpayer's property has been arbitrarily or unlawfully fixed by the county board of equalization at an amount greater than its actual value, or that its value has not been fairly and properly equalized when considered in connection with the assessment of other property and that such disparity and lack of uniformity result in a discriminatory, unjust, and unfair assessment. *Newman v. County of Dawson*, 167 Neb. 666, 94 N.W.2d 47 (1959). Such a burden is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the taxpayer's property, when compared with valuations placed on other similar properties, is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain legal duty, and not mere errors of judgment. *Id.*

*Omaha Country Club v. Douglas Cty. Bd. of Equal.*, 11 Neb. App. at 174-75, 645 N.W.2d at 826.

Our focus in this case is not on equalization, but, rather, on the initial question of whether the property valuation was fixed arbitrarily, which cannot be established simply by showing a

difference of opinion on value between the property owner and the appraiser. Rather, arbitrariness must be demonstrated by evidence that the assessment is grossly excessive and is a result of arbitrary or unlawful action and not just a mere error in judgment. *Cabela's Inc. v. Cheyenne Cty. Bd. of Equal.*, 8 Neb. App. 582, 597 N.W.2d 623 (1999).

TERC found that "Stanard's valuation approach contained errors in the application of accepted mass appraisal techniques." It concluded that its concerns over Stanard's methods "call into question the reliability of Stanard's appraisal"; however, "no market data was received in evidence supporting a different opinion of any of the income approach factors." It therefore determined that "there is not clear and convincing evidence that the . . . Board's determination of value was unreasonable or arbitrary." We interpret TERC's remarks as a finding that TJ did not satisfy its burden of proof. We agree.

Stanard used a cost approach and an income approach supported by an examination of sales of alleged comparable properties. However, Stanard testified that the included properties were from dissimilar locations without appropriate adjustments. TERC concluded that without appropriate adjustments, the alleged comparable properties were less relevant indicators of the actual value of the property.

As to the cost approach, TERC was critical of Stanard's use of outdated costing tables. It found that "the use of outdated costing tables is less likely to produce the actual value of the Subject Property as of January 1, 2013." As to the income approach, TERC stated it had "concerns about the methods employed by Stanard to develop his market factors." These concerns were based in part upon testimony from Jessen that it would be inappropriate to compare the subject property, located in a rural community, to destination hotels in larger communities. The concerns were also based upon Stanard's use of published room rates to determine potential gross income when Jessen testified that the published rate for the subject property was not the actual room rate. TJ produced evidence of gross income based upon actual numbers,

which were significantly lower than the numbers proffered by Stanard.

While these deficiencies are the basis for finding that the presumption of correctness by the Board has been overcome, we find them insufficient to satisfy the second half of TJ's burden of proof: to show by clear and convincing evidence that the Board's valuation is arbitrary. In order to meet this burden, TJ needed to present competent evidence of the property's actual value as of January 1, 2013.

Pursuant to Neb. Rev. Stat. § 77-201(1) (Reissue 2009), all taxable property shall be valued at actual value for taxation purposes. "Actual value" means the market value of real property in the ordinary course of trade. Neb. Rev. Stat. § 77-112 (Reissue 2009). Additionally, real property value shall be assessed as of January 1 of each tax year. Neb. Rev. Stat. § 77-1301 (Cum. Supp. 2014). TJ failed to present any evidence of the property's actual value as of January 1, 2013, because its income valuation was based on the property's 2013 profit and loss figures. In order to support its calculation of the property's actual value as of January 1, 2013, TJ should have produced the profit and loss statement for 2012. In addition, as noted by TERC, the property's income had not yet stabilized and TJ failed to produce any market data to support its income approach valuation.

We acknowledge the deficiencies in both parties' valuations; however, TJ failed to produce competent evidence of the property's actual value as of January 1, 2013. While Stanard's income approach had deficiencies, particularly in the development of the market factors, TJ did not present any market data supporting a different opinion of any of the income approach factors. We therefore affirm TERC's decision that TJ failed to present clear and convincing evidence that the county's valuation was arbitrary and unreasonable.

*TERC's Standard of Review.*

TJ next assigns that TERC erred in failing to apply the proper standard of review. It argues that TERC merged its consideration of the reasonableness presumption with the

taxpayer's ultimate burden of persuasion, causing improper deference to the county's determination without consideration of all the evidence.

Once the statutory presumption is overcome, as it was in this case, the reasonableness of the valuation fixed by a board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board. *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008). The taxpayer must prove unreasonableness by clear and convincing evidence. See *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013).

[7,8] We reject TJ's argument that TERC merged its consideration of the reasonableness presumption with the taxpayer's ultimate burden of persuasion. TERC recognized that TJ overcame the presumption by the production of competent evidence; however, it found that TJ failed to present clear and convincing evidence that the valuation was arbitrary or unreasonable. Competent evidence is evidence that is admissible and tends to establish a fact in issue. See *Mathes v. City of Omaha*, 254 Neb. 269, 576 N.W.2d 181 (1998). Clear and convincing evidence, however, is evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. See *In re Interest of Zachary D. & Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015). While TJ's evidence may have been competent to overcome the presumption, that does not mean that it was clear and convincing to produce a firm belief that the valuation was arbitrary or unreasonable. Thus, we find this assignment of error to be without merit.

*Constitutionality of § 77-5016.*

Finally, TJ argues that the procedures to appeal tax assessments as set forth in § 77-5016 are unconstitutional because they violate due process and are impermissibly biased toward the government.

[9] To raise a valid challenge to the constitutionality of a statute, a litigant is required to properly raise and preserve

the issue before the trial court. See *Clark v. Tyrrell*, 16 Neb. App. 692, 750 N.W.2d 364 (2008). TJ did not challenge the constitutionality of § 77-5016 until the present appeal. Additionally, we note that TJ failed to comply with the notice provision for challenging the constitutionality of a statute as set forth in Neb. Ct. R. § 2-109(E) (rev. 2014). Because this issue was not raised before TERC, it is not properly before this court and we will not address it further on appeal.

## CONCLUSION

We conclude that TJ failed to prove by clear and convincing evidence that the Board's valuation was arbitrary and unreasonable. Accordingly, we affirm TERC's decision.

Affirmed.

———————————

Elizabeth S. Canas-Luong, appellee, v.
Americold Realty Trust, appellant.
___ N.W.2d ___

Filed June 23, 2015.    No. A-14-751.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.
2. ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.
3. **Workers' Compensation: Time.** A claimant has not reached maximum medical improvement until all the injuries resulting from an accident have reached maximum medical healing.
4. ____: ____. The appropriate time to award permanent disability benefits is after the worker reaches maximum medical improvement.
5. **Workers' Compensation.** The Nebraska Workers' Compensation Act authorizes an award of permanent disability, either partial or total, as a means of compensating the injured worker for the loss of earning capacity.
6. ____. When a whole body injury is the result of a scheduled member injury, the member injury should be considered in the assessment of the whole body